# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### AT CHARLESTON

| | |
|---|---|
| **IN RE ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION** | **Master File No. 2:12-MD-02327** <br> **MDL 2327** |
| **THIS DOCUMENT RELATES TO:** <br><br> *Pilar ElQuesny, et al. v. Ethicon, Inc., et al.* <br> *Case No. 2:15-cv-13288* | **WAVE 8** <br><br> **JOSEPH R. GOODWIN** <br> **U.S. DISTRICT JUDGE** |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), Defendants Ethicon, Inc. and Johnson & Johnson (collectively "Ethicon") hereby move for summary judgment on Plaintiffs' claims for Negligence (Count I), Strict Liability – Manufacturing Defect (Count II), Strict Liability – Failure to Warn (Count III), Strict Liability – Defective Product (Count IV), Strict Liability - Design Defect (Count V), Common Law Fraud (Count VI), Fraudulent Concealment (Count VII), Constructive Fraud (Count VIII), Negligent Misrepresentation (Count IX), Negligent Infliction of Emotional Distress (Count X), Breach of Express Warranty (Count XI), Breach of Implied Warranty (Count XII), Violation of Consumer Protection Laws (Count XIII), Gross Negligence (Count XIV), and Unjust Enrichment (Count XV).[1]

---

[1] By moving for summary judgment on some issues and not others, Defendants are not waiving or abandoning their right to assert their arguments on those issues under the applicable federal or local rules of procedure at such other time(s) as the remand or transferor court deems appropriate.

Plaintiffs Pilar and Mongy ElQuesny allege complications arising from the implantation of Gynemesh PS.  As a matter of law, these claims should be dismissed as set forth below.

## STATEMENT OF UNDISPUTED FACTS

1.      Plaintiff Pilar ElQuesny suffered from pelvic organ prolapse and underwent surgery on March 15, 2005 where she received the Gynemesh.  Short Form Compl., Doc. No. 1, at ¶¶ 8, 10; Exh. A: Pl. Fact Sheet (Redacted) at 5.

2.      The implant surgery occurred in Indiana.  Ms. ElQuesny has been a resident of Indiana at all times pertinent to this case, and all of the medical treatment related to her claimed bodily injuries occurred in Indiana.  Exh. A: Pl. Fact Sheet (Redacted) at 2, 5, 7, 8.

3.      Plaintiffs filed suit on September 18, 2015.  Short Form Compl., Doc. No. 1. They assert the following claims: Negligence; Strict Liability – Manufacturing Defect; Strict Liability – Failure to Warn; Strict Liability – Defective Product; Strict Liability – Design Defect; Common Law Fraud; Fraudulent Concealment; Constructive Fraud; Negligent Misrepresentation; Negligent Infliction of Emotional Distress; Breach of Express Warranty; Breach of Implied Warranty; Violation of Consumer Protection Laws; Gross Negligence; Unjust Enrichment; Loss of Consortium; Punitive Damages; and Discovery Rule and Tolling.  *Id.* at ¶ 13.

## ARGUMENT

Summary judgment is proper where, when drawing permissible inferences in favor of the nonmoving party, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  The Court's function at this stage is not to "weigh

the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## I.    Indiana Law Applies to Plaintiffs' Substantive Claims.

For cases filed directly in the MDL, this Court has ruled that "the choice of law that applies is the place where the plaintiff was implanted with the product." *Belanger v. Ethicon, Inc.*, No. 2:13-cv-12036, 2014 WL 346717, at *7 (S.D.W. Va. Jan. 30, 2014).   Here, Ms. ElQuesny's implantation surgery occurred in Indiana and, therefore, the Indiana choice-of-law test applies. *See* Short Form Compl., Doc. No. 1 at ¶ 11.

Indiana applies "a modified lex loci delicti analysis," which presumes that the substantive law where the tort occurred governs and applies that law "'unless the state where the tort occurred is an insignificant contact.'" *Morgan v. Fennimore*, 429 F. App'x 606, 609 (7th Cir. 2011) (quoting *Simon v. United States*, 805 N.E.2d 798, 804 (Ind. 2004)).   Only then will Indiana courts consider which state has the "most significant relationship." *Simon*, 805 N.E.2d at 803. "[I]t is a 'rare case' when the place of the tort is insignificant." *Alli v. Eli Lilly & Co.*, 854 N.E.2d 372, 379 (Ind. Ct. App. 2006) (quoting *Simon*, at 805 N.E.2d at 806)).

As the place of Plaintiffs' residence, the place of her implant procedure, and the state where Ms. ElQuesny's treatment and alleged injuries occurred, Indiana is the location where the alleged tort occurred and the state with the "most significant relationship" to Plaintiffs' product liability claims.   Exh. A: Pl. Fact Sheet (Redacted) at 2, 5, 7, 8.   Accordingly, based on the significant contacts the State of Indiana has with this case and the choice-influencing factors that favor the state, Indiana substantive law applies to Plaintiffs' personal injury claims. *E.g.*, *Alli*, 854 N.E.2d at 379 (concluding that the law of the state where patient took prescribed drugs and suffered injuries governed product liability claims).

**II.      The Court Should Grant Summary Judgment on Plaintiffs' Common Law Personal Injury Claims (Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIV, XV) and Merge Them Into a Single Indiana Products Liability Act ("IPLA") Claim.**

The IPLA provides the sole and exclusive cause of action for Plaintiffs' alleged personal injury claims. *See* Ind. Code § 34-20-1-1 ("This article governs *all actions . . . for physical harm caused by a product . . . regardless of the substantive legal theory or theories upon which the action is brought*.") (emphasis added).  The Indiana Supreme Court has confirmed that the IPLA "govern[s] *all* product liability actions," regardless of "the [underlying] theory of liability." *Stegemoller v. ACandS, Inc.*, 767 N.E.2d 974, 975 (Ind. 2002) (emphasis added); *see also Am. Int'l Ins. Co. v. Gastite*, No. 1:08-cv-1360-RLY-DML, 2009 WL 1383277, at *2 (S.D. Ind. May 14, 2009) ("When a consumer seeks to recover from a manufacturer for physical harm from a product, the IPLA provides for *a single cause of action*, regardless of the plaintiff's substantive legal theories.") (emphasis added).

In their Short Form Complaint, Plaintiffs assert the following common law product liability claims:  Negligence (Count I); Strict Liability - Manufacturing Defect (Count II); Strict Liability - Failure to Warn (Count III); Strict Liability - Defective Product (Count IV); Strict Liability - Design Defect (Count V); Common Law Fraud (Count VI); Fraudulent Concealment (Count VII); Constructive Fraud (Count VIII); Negligent Misrepresentation (Count IX); Negligent Infliction of Emotional Distress (Count X); Breach of Express Warranty (Count XI); Breach of Implied Warranty (Count XII); Gross Negligence (Count XIV); and Unjust Enrichment (Count XV).  Each of these claims is premised on Ms. ElQuesny's alleged personal injuries.  Accordingly, each claim is subsumed by the IPLA and the Court should merge them

4

into a single IPLA claim.[2]  This was the approach the Court took under Indiana law in *Ridgley v.*
*Ethicon, Inc.*, 2:12-CV-01311, 2017 WL 525854, at *2 (S.D.W. Va. Feb. 8, 2017), and is likewise
appropriate here.

### III.    Plaintiffs' Failure to Warn Claims Fail as a Matter of Law Because They Cannot Establish Causation.

To sustain a failure to warn claim in the context of medical implants, a plaintiff "must not
only show that a manufacturer's warning was inadequate, but that such inadequacy affected the
prescribing physician's use of the product and thereby injured the plaintiff." *Minisan v. Danek*
*Med. Inc.*, 79 F. Supp. 2d 970, 978–79 (N.D. Ind. 1999).  If no alleged deficiency in Ethicon's
warnings could have affected Dr. Andrew Waran's recommendation so as to have caused Ms.
ElQuesny's injury, then summary judgment is appropriate. *See id.* at 978-79 (granting summary
judgment for medical device manufacturer because surgeon knew of risks and allegedly
inadequate label did not affect decision to use device); *see also Kovach v. Caligor Midwest*, 913
N.E.2d 193, 199 (Ind. 2009) (affirming judgment to measurement cup's manufacturer where the
absence of a warning on the cup did not affect the healthcare provider's treatment).

Where, as here, Plaintiffs have not deposed Ms. ElQuesny's implanting surgeon,
Plaintiffs cannot meet their burden of proof to show that a different warning would have altered

---

[2] Indiana federal trial courts faced with common law claims subject to the IPLA either dismiss
them outright or merge them into a single IPLA claim. *Compare Ryan ex rel. Estate of Ryan v.*
*Philip Morris USA, Inc.*, No. 1:05 CV 162, 2006 WL 449207, at *3 (N.D. Ind. Feb. 22, 2006)
(holding that plaintiff's "common law claims for negligence as well as fraud . . . must be
dismissed" because they "fall within the purview of the IPLA"), *and Cincinnati Ins. Cos. v.*
*Hamilton Beach/Proctor-Silex, Inc.*, No. 4:05 CV 49, 2006 WL 299064, at *3 (N.D. Ind. Feb. 7,
2006) (dismissing common law negligence claim on grounds it is "subsumed" by IPLA), *with*
*Lautzenhiser v. Coloplast A/S*, No. 4:11-cv-86-RLY-WGH, 2012 WL 4530804, at *3-*6 (S.D.
Ind. Sept. 29, 2012) (treating negligence, design defect, failure to warn, and implied warranty
claims as "a merged IPLA claim"), *and Atkinson v. P & G-Clairol, Inc.*, 813 F. Supp. 2d 1021,
1024 (N.D. Ind. 2011) (merging negligence and strict liability claims "to form one products
liability claim under the IPLA"), *and Tungate v. Bridgestone Corp.*, No. IP 02-0151-C H/K,
2004 WL 771191, at *6 (S.D. Ind. Mar. 26, 2004) (same).

his decision to implant the Gynemesh. *See Higgins v. Ethicon, Inc.,* No. 2:12-cv-01365, 2017 WL 2813144, at *3 (S.D. W. Va. Mar. 30, 2017) (granting summary judgment as to failure to warn because "plaintiffs have failed to present any testimonial or other evidence that Dr. Anhalt would not have used or prescribed the TVT-S . . . . had he received a different warning.") (Texas law); *Contreras v. Boston Sci. Corp.,* No. 2:12-CV-03745, 2016 WL 1436682, at *4 (S.D.W. Va. Apr. 11, 2016) ("plaintiffs have not provided any citations to the record showing that Dr. Baker, the implanting physician, would have taken a different course of action even if she had been given an adequate warning") (California law); *Sowder v. Boston Sci. Corp.,* No. 2:13-CV-05149, 2015 WL 5838507, at *5 (S.D. W. Va. Oct. 5, 2015) (same) (Florida law); *Bennett v. Boston Sci. Corp.,* No. 2:13-CV-06641, 2015 WL 2088733, at *4 (S.D.W. Va. May 5, 2015) (granting summary judgment where "there is no evidence that Dr. Edgerton, the implanting physician, would have taken a different course of action even if he had been given an adequate warning") (West Virginia law); *see also Mullins v. Ethicon, Inc.,* (Nancy Oxley) No. 2:12-CV-02952, 2017 WL 345865, at *2 (S.D.W. Va. Jan. 20, 2017) (plaintiff "unable to meet her burden of proof regarding [implanter's] reliance on any alleged inadequate warning and whether an alleged sufficient warning would have altered his decision to implant the device because [the implanter] died before he could offer evidence"). Accordingly, Plaintiffs cannot prove causation and all of their claims asserting failure to warn (Counts I and III) fail as a matter of law.[3]

---

[3] Ethicon further asserts that, to the extent Counts VI, VII, VIII, IX, X, XI, XII, XIII, or XIV are based on any alleged failure to warn, these claims are merely repackaged strict liability or negligent failure to warn claims, and are therefore subsumed and should be likewise dismissed with prejudice.

IV.    **Alternatively, Plaintiffs' Strict Liability Claims Fail Under the Indiana Product Liability Act (Counts II, III, IV, and V).**

Defendants are entitled to summary judgment on Counts II, III, IV, and V because the IPLA abolishes strict liability claims.

**Strict Liability Failure to Warn (Count III).**   Under the IPLA, failure to warn claims sound in negligence, *not* strict liability.   *See* Ind. Code § 34-20-2-2 ("[I]n an action . . . based on an alleged failure to provide adequate warnings or instructions regarding the use of the product, the party making the claim *must establish that the manufacturer or seller failed to exercise reasonable care* under the circumstances . . . in providing the warnings or instructions.") (emphasis added).    Consistent with the plain language of the IPLA, multiple courts have confirmed that the IPLA does not recognize strict liability failure to warn claims.    *See, e.g., Piltch v. Ford Motor Co.*, 11 F. Supp. 3d 884, 888 (N.D. Ind. 2014) ("[A] so-called strict-liability claim for . . . inadequate warning is strict in name only, and actually falls on the negligence side of the ledger."), *aff'd* 778 F.3d 628 (7th Cir. 2015); *Chesnut v. Roof*, 665 N.E.2d 7, 10 (Ind. Ct. App. 1996) (explaining that IPLA "abolish[es] the theory of strict liability for . . . duty to warn cases").   Accordingly, Ethicon is entitled to summary judgment on Count III.

**Strict Liability Design Defect (Count V).**   Plaintiffs also assert a design defect claim sounding in strict liability (Count V).   Like failure to warn claims, design defect claims under the IPLA sound in negligence, *not* strict liability.   *See* Ind. Code § 34-20-2-2 ("[I]n an action based on an alleged design defect in the product[,] . . . the party making the claim *must establish that the manufacturer or seller failed to exercise reasonable care* under the circumstances in designing the product . . . .") (emphasis added); *Piltch*, 11 F. Supp. 3d at 888 ("[A] so-called strict-liability claim for a design defect . . . is strict in name only, and actually falls on the negligence side of the ledger."); *TRW Vehicle Safety Sys., Inc. v. Moore*, 936 N.E.2d 201, 209

(Ind. 2010) (holding that strict liability standard of proof does not apply to design defect claims under IPLA); *Chesnut*, 665 N.E.2d at 10 (explaining that IPLA "abolish[es] the theory of strict liability for design defect"). Accordingly, Ethicon is entitled to summary judgment on Count V for this additional reason.

**V.    Ethicon Is Also Entitled to Summary Judgment on Plaintiffs' Claim for Manufacturing Defect, Whether Sounding in Negligence (Count I) or Strict Liability (Count II).**

Plaintiffs assert a manufacturing defect claim sounding in Negligence (Count I) and Strict Liability (Count II). Ethicon is entitled to summary judgment on these claims because Plaintiffs have no evidence of a manufacturing defect.

As noted above, the IPLA abolishes strict liability, so Plaintiffs do not have a strict liability manufacturing defect claim available to them.

Nor can they establish such a claim under a negligence theory. In Indiana, "[a] product contains a manufacturing defect when it deviates from its intended design." *Hathaway v. Cintas Corp. Servs.*, 903 F. Supp. 2d 669, 673–74 (N.D. Ind. 2012) (collecting authority); *see also Piltch v. Ford Motor Co.*, 778 F.3d 628, 632 (7th Cir. 2015) (applying Indiana law). The plaintiff bears the burden of presenting evidence of a manufacturing defect and generally must present the testimony of an expert or other "skilled" witness to meet that burden. *Piltch*, 778 F.3d at 633. Neither the availability of alternative designs nor the mere existence of a product failure will support the inference of a manufacturing defect. *See id.* (affirming grant of summary judgment to airbag manufacturer despite plaintiffs' reliance on owner's manual and post-accident state of vehicle's airbags because manual and circumstantial crash evidence failed to support inference that airbags deviated from intended design); *Hathaway*, 903 F. Supp. 2d at 674 (granting summary judgment to manufacturer of T-shirt that caught fire and concluding that an alternative shirt design could not overcome lack of evidence of product deviation); *Westchester*

*Fire Ins. Co. v. Am. Wood Fibers, Inc.*, No. 2:03-CV-178-TS, 2006 WL 3147710, at \*5 (N.D. Ind. Oct. 31, 2006) (dismissing claim mid-trial because plaintiff had no evidence that wood flour deviated from intended design).

Plaintiffs cannot meet their burden of producing evidence establishing that Ms. ElQuesny's device deviated from its intended design. The absence of that evidence is fatal to Plaintiffs' manufacturing defect claim under the IPLA. *See Piltch*, 778 F.3d at 633 (granting summary judgment in favor of defendant on manufacturing defect claim where plaintiffs failed to retain vehicle and black box "which could have contained details about the crash"). Summary judgment on Plaintiffs' manufacturing defect claim, whether sounding in sounding in Negligence (Count I) or Strict Liability (Count II), is therefore proper.

## VI.    There Is No Claim for "Defective Product" Under Indiana Law (Count IV).

In Count IV, Plaintiffs seek to hold Defendants strictly liable on a "strict-liability defective product" theory. To the extent that this claim is premised solely on strict liability, it fails for the same reason as the other strict liability claims—*i.e.*, because the IPLA does not recognize strict liability. *See supra*. To the extent Plaintiffs seek to establish an IPLA claim for "defective product," there does not appear to be any such claim available under Indiana law. Under the IPLA, a plaintiff must prove, *inter alia*, that the injury-causing product was sold "in a defective condition unreasonably dangerous to any user or consumer." Ind. Code § 34-20-2-1. A plaintiff satisfies this requirement "by showing a design defect, a manufacturing defect, or a failure to warn." *Piltch*, 778 F.3d at 632. Any claim for "defective product" is inherently redundant of Plaintiffs' manufacturing defect, design defect, and failure to warn theories. The Court should grant summary judgment as to this claim for this additional reason. *See Lautzenhiser*, 2012 WL 4530804 at \*4 (dismissing breach of express warranty claim on grounds

that it "is already covered by [plaintiff's IPLA claim in] Counts II and III (defective design and failure to warn)").

## VII.    Ethicon Is Entitled to Summary Judgment on Count IX Because the Theory of Negligent Misrepresentation Does Not Apply in Personal Injury Cases.

Ethicon is entitled to summary judgment on Count IX for yet another reason: Indiana courts do not extend the theory of negligent misrepresentation to personal injury cases.

Indiana follows Section 552 of the Restatement (Second) of Torts. *See Lautzenhiser*, 2012 WL 4530804, at \*6. Section 552 describes a negligent misrepresentation claim as arising when a person "who, in the course of his business profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions." Restatement (Second) of Torts § 552. Consistent with the plain language of Section 552—which confines negligent misrepresentation to cases involving pecuniary loss resulting from business transactions—the court in *Lautzenhiser* declined to extend the doctrine to a product liability case. *See Lautzenhiser,* 2012 WL 4530804, at \*6. In so doing, the court explained that "Indiana courts have been loath to extend [the doctrine] beyond the employment relationship context." *Id.* (citing cases).

Here, Plaintiffs' purported claim for negligent misrepresentation is premised on Ms. ElQuesny's alleged personal injury, not a pecuniary loss related to a business transaction. Accordingly, Defendants are entitled to summary judgment on Count IX for this reason, too.

## VII.    Ethicon Is Entitled to Summary Judgment on Plaintiffs' Warranty Claims (Counts XI and XII).

In addition to being subsumed by the IPLA and duplicative of the failure to warn claim, Plaintiffs' warranty claims also fail because they are time-barred, because Plaintiffs failed to provide pre-suit notice, and due to a lack of privity.

To the extent their warranty claims are premised on economic rather than personal injury damages, they are governed by Indiana contract law, not the IPLA. *See Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153 (Ind. 2005) (holding that "contract law governs . . . purely economic loss arising from the failure of the product or service to perform as expected" and explaining that economic loss encompasses diminution in product value). Under Indiana contract law, Plaintiffs' warranty claims fail.

### A.    Plaintiffs' Warranty Claims Are Time-Barred.

Under its version of the UCC, Indiana imposes a four-year limitations period for express and implied warranty claims that commences "when tender of delivery is made." Ind. Code § 26-1-2-725(1), (2); *see also 6 Point Trust v. Gulf Stream Corp.*, No. 3:04CV353RM, 2005 WL 1429847, at *1–*2 (N.D. Ind. June 14, 2005); *Dart Indus., Inc. v. Adell Plastics, Inc.*, 517 F. Supp. 9, 11 (S.D. Ind. 1980). No discovery rule applies. *See* Ind. Code § 26-1-2-725(2) ("A cause of action accrues when the breach occurs, *regardless of the aggrieved party's lack of knowledge of the breach.*") (emphasis added).[4] Here, delivery was made on March 15, 2005, but Plaintiffs did not file this lawsuit until September 18, 2015. Accordingly, Plaintiffs' warranty claims are time-barred.

### B.    Plaintiffs' Warranty Claims Fail Because They Neglected the Pre-Suit Notice Requirement.

The warranty claims should also be dismissed for lack of pre-suit notice. *See* Ind. Code § 26-1-2-607(3); *Lautzenhiser*, 2012 WL 4530804 at *5 (dismissing implied warranty claim for lack of pre-suit notice); *Cincinnati Ins. Cos.*, 2006 WL 299064 at *3–*4 (dismissing

---

[4] Although Indiana applies a discovery rule to express warranties "explicitly extend[ing] to future performance of the goods," *see* Ind. Code § 26-1-2-725(2), no such express warranty is at issue here.

express and implied warranty claims for lack of pre-suit notice). Plaintiffs cannot dispute they failed to provide pre-suit notice of their claim. Accordingly, summary judgment is proper for this additional reason.

> **C.      Aspects of Plaintiffs' Express and Implied Warranty Caims Fail for Lack of Privity.**

Next, portions of Plaintiffs' warranty claims fail for lack of privity. Indiana law requires privity for claims of express warranty and implied warranty of fitness for a particular purpose. *See, e.g., Lautzenhiser*, 2012 WL 4530804, at *5–*6; *Atkinson*, 813 F. Supp. 2d at 1026. To the extent Plaintiffs allege these types of warranty claims, they lack the necessary privity, and they fail as a matter of law.

**VIII.    Plaintiffs' Consumer Protection Law Claim (Count XIII) Fails Because Their Federally-Regulated Product Claim Is Exempt, Time-Barred, and Failed to Comply with the Written Notice Requirement.**

Plaintiffs' consumer protection law claim (Count XIII) is governed by Indiana's Deceptive Consumer Sales Act ("DCSA"). *See* Ind. Code § 24-5-0.5-1–10. The DCSA does not apply to "an act or practice that is (1) required or expressly permitted by federal law, rule, or regulation; or (2) . . . state law." *Id.* § 24-5-0.5-6. Here, the device is regulated by the FDA, and was sold with the FDA's permission. The DCSA therefore does not apply, and Plaintiffs' consumer protection law claim should be dismissed.

Further, even if the DCSA applied, any such claim would be time-barred. The DCSA imposes a two-year statute of limitations, which begins running from the "occurrence of the deceptive act." *Id.* § 24-5-0.5-5(b). The discovery rule does not apply. *See A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955, 965 (Ind. Ct. App. 2000), *disagreed with on other grounds by Magic Circle Corp. v. Schoolcraft*, 4 N.E.3d 768, 770 (Ind. Ct. App. 2014). Here, the alleged

deceptive act occurred on March 15, 2005, but Plaintiffs did not file this lawsuit until September 18, 2015. Accordingly, their DCSA claim is time-barred

The DCSA further requires, as a precondition to suit, that the consumer give notice of the deceptive act to the supplier within the earliest of six months of learning of the deceptive act, one year of the consumer transaction, or the period of time set by written warranty. Ind. Code § 24-5-0.5-5(a). Here, Plaintiffs did not provide the required pre-suit notice. Accordingly, the DCSA claim fails for this additional reason. *See Ridgley*, 2017 WL 525854, at *3 (dismissing DCSA claim for failure to provide pre-suit notice).

### IX.    Summary Judgment Is Proper on Plaintiffs' Unjust Enrichment Claim (Count XV).

In addition to being subsumed, *see supra*, Plaintiffs' unjust enrichment claim fails because it is an equitable remedy, not a vehicle for receiving compensatory damages. In Indiana, the equitable remedy of unjust enrichment is limited to restitution. *See Lautzenhiser*, 2012 WL 4530804, at *8 (citing *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991)). An unjust enrichment claim seeking damages for personal injuries, healthcare costs, and lost wages therefore warrants dismissal. *See id.* To the extent that Plaintiffs seek such damages through their unjust enrichment claim, Ethicon is entitled to summary judgment on that claim.

### CONCLUSION

For these reasons, Ethicon's motion for partial summary judgment should be granted. Plaintiffs' claims for Negligence (Count I), Strict Liability – Manufacturing Defect (Count II), Strict Liability – Failure to Warn (Count III), Strict Liability – Defective Product (Count IV), Strict Liability – Design Defect (Count V), Common Law Fraud (Count VI), Fraudulent Concealment (Count VII), Constructive Fraud (Count VIII), Negligent Misrepresentation (Count IX), Negligent Infliction of Emotional Distress (Count X), Breach of Express Warranty (Count XI), Breach of Implied Warranty (Count XII), Violation of Consumer Protection Laws (Count

XIII), Gross Negligence (Count XIV), and Unjust Enrichment (Count XV) should be dismissed with prejudice.

Respectfully submitted,


/s/ *William M. Gage*
William M. Gage (MS Bar No. 8691)
Butler Snow LLP
1020 Highland Colony Parkway
Suite 1400 (39157)
P.O. Box 6010
Ridgeland, MS 39158-6010
(601) 985-4561
william.gage@butlersnow.com


/s/ *Susan M. Robinson*
Susan M. Robinson (W. Va. Bar No. 5169)
Thomas Combs & Spann PLLC
300 Summers Street
Suite 1380 (25301)
P.O. Box 3824
Charleston, WV 24338
(304) 414-1800
srobinson@tcspllc.com

Counsel for Ethicon, Inc. and
Johnson & Johnson

14

## CERTIFICATE OF SERVICE

I certify that on this date, I electronically filed this document with the clerk of the court using the CM/ECF system, which will send notification of this filing to CM/ECF participants registered to receive service in this MDL.

/s/ William M. Gage
William M. Gage

43397946.v1